IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PATRINA HARRISON,

    Plaintiff,

  v.

WELLS FARGO BANK, N.A. and
NICHOLAS PACUMIO,

    Defendants.

No. C 18-07824 WHA

**ORDER ON MOTION
TO DISMISS**

## INTRODUCTION

In this race-discrimination action, defendants move to dismiss *pro se* plaintiff's complaint against a bank. For the reasons stated below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

The following facts, taken from the complaint, are assumed to be true for purposes of the present motion. *Pro se* plaintiff Patrina Harrison has been a customer of defendant Wells Fargo Bank, N.A. since 1991 and "has conducted all of her financial proceedings with [that] establishment." At the time of the incident giving rise to the instant action, plaintiff was applying for a federal home loan with Wells Fargo as a first time home buyer (Dkt. No. 1 at 3).

On June 18, 2018, plaintiff visited the Wells Fargo branch located at 1183 Ocean Avenue, San Francisco, to review the status of her federal home loan application and make a deposit to her business checking account. When plaintiff took a seat to show necessary documentation the banker, defendant Nicholas Pacumio, the branch manager, asked plaintiff

"what are you doing" and told her to "get out, you're black!" Pacumio then turned to another customer — an "Asian woman" who had entered the bank at the same time as plaintiff — offered her a water bottle, escorted her to a teller desk, and helped her with her transaction (Dkt. No. 1 at 1).

In December 2018, plaintiff filed the instant action seeking $10 million. She alleges that Pacumio's actions were "offensive" and that she "sustained psychological and emotional injuries" due to Wells Fargo's "discriminatory policy," which was implemented and executed "while serving under color of law, in the capacity of the federal government, in facilitation of processing [a] government home loan." She further alleges that she "suffered emotional distress due to [the denial of] her federal home loan application," as she was disallowed from providing documentation necessary to support her federal home loan application (*id.* at 1, 4). The gravamen of plaintiff's alleged injuries stemming from defendants' allegedly racially discriminatory actions are her emotional distress and inability to obtain a federal home loan.

Specifically, plaintiff broadly asserts three claims (containing sub-claims) against defendants under (1) 42 U.S.C. §§ 1981, 1982 for denying plaintiff "access to servicing her federal home loan application," thereby violating her "right to make and enforce a contract with Wells Fargo Bank, as a result of racial discrimination"; (2) 42 U.S.C. § 1983 and the Equal Protection Clause for "humiliating [plaintiff], by denying her service and not providing equal access to the bank facility and [its] promotional products"; and (3) 42 U.S.C. §§ 1981, 1983 and Section 601 of the Civil Rights Act of 1964 for "refusing [plaintiff] the right to service while serving under [the] color of law, in the defendants['] capacity serving as an agent of the federal government, processing federal home loan[] applications," thereby "inflict[ing] emotional distress injuries" onto plaintiff (*id*. at 3–4).

Defendants now move to dismiss the complaint as to Wells Fargo for failure to state a claim (Dkt. No. 16 at 1–2). Plaintiff opposes.[1] This order follows full briefing and oral argument.

---

[1] In her opposition, plaintiff does not address any legal arguments raised by defendants relating to her claims brought under Sections 1981–83 and instead argues for new claims (not in the complaint) under the Equal Credit Opportunity Act and Fair Housing Act (Opp. 6–8).

2

**ANALYSIS**

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681.

*Pro se* pleadings must be liberally construed. *See Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies in the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). A court, however, "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

**1.     42 U.S.C. §§ 1981, 1982.**

Plaintiff first asserts claims under 42 U.S.C. §§ 1981 and 1982. Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006). While Section 1981 applies to both public and "purely private acts of racial discrimination," it "reaches only *purposeful* discrimination." *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 622 (9th Cir. 2019) (internal citations and quotations omitted) (emphasis in original). Section 1982 prohibits racial discrimination in the purchasing of real property.

"In order to evaluate claims of intentional discrimination where intent itself is generally impossible to prove," our court of appeals applies the *McDonnell* burden-shifting framework.

*Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). "[I]f the plaintiff satisfies the initial burden of establishing a prima facie case of racial discrimination, the burden shifts to the defendant to prove it had a legitimate non-discriminatory reason for the adverse action." *Ibid*. "If the defendant meets that burden, the plaintiff must prove that such a reason was merely a pretext for intentional discrimination." *Ibid*.

### A. Section 1981.

To establish a *prima facie* case for a Section 1981 claim in a non-employment context, plaintiff must show that: "(1) [she] is a member of a protected class, (2) [she] attempted to contract for certain services, (3) [she] was denied the right to contract for those services," and (4) "such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class."[2] *Ibid*.

Here, plaintiff alleges that Pacumio told her to "get out, you're black" and that her federal home loan application was subsequently denied "because she was not allowed [to] provide to the bank additional, requested documentation to support the federal home loan application" (Dkt. No. 1 at 1–2). Defendants argue that plaintiff failed "to plausibly explain how the alleged conduct prevented her from making or enforcing a contract," such as whether plaintiff was able to complete her transaction at another bank or inquire about the statute of her home loan by other means (Dkt. No. 16 at 6). They further argue that plaintiff failed "to establish any nexus between the alleged harm (the denial of her purported loan application) and the alleged discriminatory conduct (asking her to leave the bank)" (*ibid.*). This order disagrees.

---

[2] Our court of appeals has not explicitly adopted *McDonnell's* fourth element for the Section 1981 *prima facie* case. The appellate court found the United States Court of Appeals for the Sixth Circuit's reasoning compelling in *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001), which rejected the traditional fourth element in "distinguish[ing] the commercial services context from the employment context" because "this flat requirement is too rigorous in the context of the denial of services by a commercial establishment." *Lindsey*, 447 F.3d at 1145. The Sixth Circuit thus adopted the following fourth element: "that (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *Christian*, 252 F.3d at 872. While our court of appeals applied the traditional "similarly situated" element, it left open the possibility that this alternative test may be appropriate in some cases. *Lindsey*, 447 F.3d at 1145. This order, however, does not reach this issue because it finds that under either standard, plaintiff sufficiently pled a Section 1981 claim, as discussed below.

4

Though mere legal conclusions are insufficient to overcome a Rule 12(b)(6) challenge, Rule 8 "does not require detailed factual allegations." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotations omitted). Taking all factual allegations (though sparse) as true and construing them in the light most favorable to the nonmoving *pro se* plaintiff, this order finds that plaintiff has sufficiently pled that she attempted to contract for services (the federal home loan application) and that she was denied the right to contract for those services, as she was allegedly denied the opportunity to perfect her federal loan application on account of Pacumio's racially discriminatory actions. The short and plain statement of plaintiff's claim is adequate for purposes of the instant motion. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (noting that *pro se* pleadings must be liberally construed).

During oral argument, defendants relied upon *National Association of African American-Owned Media v. Charter Communications, Inc.*, 915 F.3d 617, 626–27 (9th Cir. 2019), for the proposition that plaintiff failed to allege facts as to the fourth element — namely, that defendants' service she was allegedly denied was made available to similarly situated people. In *Charter Communications*, the plaintiffs brought a Section 1981 claim based on the defendant's alleged refusal to enter into a carriage contract with plaintiffs due to racial discrimination. *Charter Commc'ns*, 915 at 619–22. There, the plaintiffs alleged "various instances of contradictory, disingenuous, and disrespectful behavior on the part of" the defendants, such as "a pattern of declining and delaying meetings with [the plaintiff], combined with a refusal to contract despite presenting intimations to the contrary" and the defendant's "repeated misleading and insulting communications with" the plaintiff. *Id*. at 626. Our court of appeals noted that "these claims alone would not constitute a plausible [Section] 1981 claim," as "[c]orporate red tape, inconsistent decision-making among network leadership, and even boorish executives are not themselves necessarily indicative of discrimination." *Ibid*. Ultimately, however, it found a plausible Section 1981 claim because the plaintiffs "supplemented these claims by pleading that white-owned companies were not treated similarly." *Ibid*.

5

In liberally construing *pro se* plaintiff's complaint, this order finds that plaintiff sufficiently alleged disparate treatment. The crux of her allegation is that she was denied the service required to obtain the opportunity to contract with defendant (*i.e.*, present necessary paperwork to complete her application) based on her race where the branch manager offered the same service (*i.e.*, the ability to complete her transactions with Wells Fargo) to another customer of a different race (Dkt. No. 1 at 1). The level of detail defendants argues for amounts to "a factual inquiry that is inappropriate in reviewing a 12(b)(6) motion." *Charter Commc'ns*, 915 F.3d at 626 n.8.

This order notes that plaintiff makes many new allegations for the first time in her opposition. While this order may not consider these new allegations (as they are outside the complaint), they reaffirm the aforementioned finding that plaintiff sufficiently pled a Section 1981 claim. The new allegations include the following. She states that she went to Wells Fargo in order "to submit required documentation to facilitate a favorable decision in the processing of her First Time Home Buyer, Federal home loan application, with limited credit and low down payment" (Dkt. No. 21 at 3). She claims that she intended to present said documentation "at the request [she] received from an e-mail[] on June 17, 2018" and a voice mail message from the Wells Fargo Neighborhood LIFT Program, which instructed her to "forward the required documentation before or on June 18, 2018 by 4:00 p.m." and "bring to your nearest Wells Fargo Branch a copy of your bankruptcy discharge notice" and other such documentation (*id*. at 3–4). Plaintiff further states that she has been to this Wells Fargo branch multiple times prior to the June 18, 2018, incident and that Pacumio had previously asked her similarly "embarrassing questions" such as "why are you coming in this branch" (*id*. at 4).

Plaintiff then alleges in her opposition (again, for the first time) that she told Pacumio she was there "to submit[] documentation to a banker in support of her home loan application" and "to make a deposit to her business checking account" (*id*. at 5). In response, he allegedly told her that "she could not see a banker" (even though "there was a banker, a white male, sitting at a desk, alone doing nothing"); that "there was a special line for business account transactions, but it was closed"; and that "she could only conduct a transaction to her personal

checking or savings account" (*ibid.*). She then claims that she "was forced to leave the bank" at Pacumio's orders, "without providing the necessary documentation" for her home loan application (*ibid.*). By the "time she commuted by public transportation [to] downtown San Francisco[] to find another Wells Fargo Bank, it was 7:00 p.m., and the Market Street Wells Fargo Branch was closed" (*ibid.*). She then alleges that when she returned to her residence, she received an email with a decision denying her home loan application "as a result of not proving the necessary documents to clarify such reflections as stated," including her bankruptcy on record, insufficient combined assets, and an amount of requested loan that was too high (*ibid.*; Dkt. No. 21-2 at 1).

Accordingly, this order finds that plaintiff has sufficiently pled a *prima facie* case for her Section 1981 claim. The motion to dismiss the Section 1981 claim is therefore **DENIED**. This order, however, encourages plaintiff to include these new allegations in her amended complaint (if and when she files one).

### B. Section 1982.

To establish a *prima facie* case for a Section 1982 claim, plaintiff must show that: (1) "she is a member of a racial minority"; (2) "she applied for and was qualified to rent or purchase certain property or housing"; (3) "she was rejected"; and (4) "the housing or rental opportunity remained available thereafter." *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980). Here, plaintiff failed to allege in the complaint sufficient facts showing that she otherwise would have qualified for the loan she applied for had she submitted the requested documentation, that her application was denied due to her race, or that housing remained available thereafter. Accordingly, the Section 1982 claim is **DISMISSED WITH LEAVE TO AMEND**.

### 2. 42 U.S.C. § 1983 AND EQUAL PROTECTION CLAUSE.

Defendants seek dismissal of plaintiff's claims under 42 U.S.C. § 1983 and the Equal Protection Clause on the ground that those claims require state action. Indeed, Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by *persons acting under color of state law*. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir

2009). And, the United States Constitution "protects individual rights only from *government* action, not from *private* action." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003) (emphasis in original).

Here, defendants are a private corporation and private citizens, not state actors. Although plaintiff alleges in a conclusory manner that Pacumio was "serving under the color of law," she has failed to allege any facts to support such a claim. Plaintiff argues that "[d]efendant was acting under the color of state law, while serving in his official capacity as branch manager, and serving as an agent of the federal government, processing federal home loan applications" (Opp. 6). This, however, is insufficient to allege that *Pacumio* — a Wells Fargo branch manager who was not in charge of processing her federal home loan application — was somehow acting under the color of law. *Price v. State of Hawaii*, 939 F.2d 702, 707–08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law, and we have stated that '[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.' " (quoting *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (alterations in original)). And, although "an ostensibly private organization or individual's action may be treated as the government's action 'if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself,' " plaintiff has failed to allege any facts suggesting "such a close nexus." *Single Moms*, 331 F.3d at 747 (quoting *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001)). Because plaintiff's Section 1983 and Equal Protection claims are incurable, they are **DISMISSED WITH PREJUDICE**.

    **3.      SECTIONS 1981, 1983, AND SECTION 601 OF THE CIVIL RIGHTS ACT OF 1964.**

Section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d states that "No Person in the United States shall, on the ground of race, color, gender or nation origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance."

This order finds that plaintiff failed to state a Title VI claim. Plaintiff alleges in her third claim that defendants "refus[ed]" her "service while serving under [the] color of law, in the defendants['] capacity serving as an agent of the federal government, processing federal home loan[] applications," thereby "inflict[ing] emotional distress injuries" (Dkt. No. 1 at 4). Plaintiff, however, did not allege facts as to whether Wells Fargo is part of a "program or activity receiving federal financial assistance" within the meaning of Title VI. That Wells Fargo participates in certain federal programs does not necessarily mean that it uses any federal funding to finance those home loans. Accordingly, the Title VI claim is **DISMISSED WITH LEAVE TO AMEND**.

### 4. ECOA, FHA AND THIRTEENTH AMENDMENT.

Plaintiff also raises new race-discrimination claims under the Equal Credit Opportunity Act (ECOA) and Fair Housing Act (FHA) for the first time in her opposition (Opp. 6–8). These new claims, however, are not included in her complaint and thus this order may not consider them. If plaintiff wishes to bring claims under the ECOA and/or FHA, she may do so in her amended complaint.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Wells Fargo from the instant action is **GRANTED IN PART AND DENIED IN PART**. Plaintiff may seek leave to amend her complaint within **TWENTY-ONE CALENDAR DAYS** of this order. Plaintiff is cautioned that failure to timely file an amended complaint that corrects the deficiencies stated herein may result in the dismissal of those claims against Wells Fargo with prejudice.

**IT IS SO ORDERED.**

Dated: May 13, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE