UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRINA HARRISON,

          Plaintiff,

    v.

WELLS FARGO BANK, et al.,

          Defendants.

No.  C 18-07824 WHA

**ORDER GRANTING
SUMMARY JUDGMENT**

## INTRODUCTION

In this race discrimination case, defendant bank moves for summary judgment.  Because it offers a legitimate, non-pretextual reason for denial of credit, plaintiff's claims under 42 U.S.C. § 1982, the Equal Credit Opportunity Act, and the Fair Housing Act fail.  And because plaintiff completed all deposits *requested* of the bank, her claims under 42 U.S.C. § 1981 also fail.  For these and the reasons stated below, the motion is **GRANTED**.

## STATEMENT

On or about June 4, 2018, *pro se* plaintiff Patrina Harrison applied for Wells Fargo's pre-approval of a one million dollar mortgage on an unspecified two-and-a-half million dollar San Francisco property with an income of approximately thirteen hundred dollars per month and liquid assets of about one hundred seventy dollars.  On June 6, Wells Fargo preliminarily denied the application due to Ms. Harrison's loan-to-income ratio, and on June 13, a Wells

Fargo underwriter denied the application for the same reason. On June 18, Wells Fargo sent Ms. Harrison a letter explaining the denial (Dkt. No. 87 at ¶¶ 6–8).

Earlier that day, Ms. Harrison visited a Wells Fargo branch at 1183 Ocean Avenue, San Francisco. She swore at her deposition that Wells Fargo had sent her an email requesting further documents in support of her mortgage pre-approval application. So, Ms. Harrison entered the Ocean Avenue branch, wishing to submit those documents and to make two deposits: the first, a check from the IRS; the second, an envelope containing $10,000 cash Ms. Harrison's boyfriend had loaned her to serve as proof of assets for her mortgage application.

But upon entering, the branch manager allegedly approached Ms. Harrison and asked, "What are you doing in the bank? You're black." The manager apparently told Ms. Harrison that she could only deposit into her personal account, not her business account, and that she could not see a banker. Taken aback, Ms. Harrison gathered herself and approached a teller, who asked "What are you doing in this neighborhood? Why are you at this bank?" Ms. Harrison requested a check deposit, which the teller took and completed before bidding Ms. Harrison farewell with a "thank you." She did not complete her cash deposit (Harrison Tr. at 80, 93, 96–98, 102–04, 106–07, 111–12, 117, 124–25; Dkt. No. 87 at ¶¶ 4–5, Exh. A).

Ms. Harrison then filed suit for racial discrimination in contract and in access to credit for housing. Wells Fargo and the branch manager move for summary judgment. This order follows full briefing and oral argument.

**ANALYSIS**

Summary judgment is appropriate if there is no genuine dispute of material fact. Material facts are those "that might affect the outcome of the suit" and "the substantive law's identification of which facts are critical and which facts are irrelevant . . . governs." A genuine dispute is one where there is sufficient evidence such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007). But a plaintiff may no longer rely on the complaint to show a dispute of fact — she must "go beyond the pleadings," to affidavits, depositions, written discovery, and admissions for support. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); FED. R. CIV. P. 56(c), (e).

Ms. Harrison raises four claims of racial discrimination: (1) in contract under 42 U.S.C. § 1981; (2) in transaction of real property under 42 U.S.C. § 1982; (3) in application for credit under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1); and (4) in residential transactions under the Fair Housing Act ("FHA"), 42 U.S.C. § 3605(a). The latter three fail, all for the same reason — Ms. Harrison was unqualified for a million dollar loan. And, the first fails because the bank did not refuse to contract with Ms. Harrison.

### 1. MS. HARRISON WAS NOT QUALIFIED FOR THE LOAN SHE SOUGHT.

Section 1982 ensures that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. To state a claim under § 1982, a plaintiff must show that: (1) "she is a member of a racial minority;" (2) "she applied for and was qualified to rent or purchase certain property or housing;" (3) "she was rejected;" and (4) "the housing or rental opportunity remained available thereafter." *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551 (9th Cir. 1980).

The ECOA prohibits "any creditor [from] discriminat[ing] against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1); *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1210 (9th Cir. 2013). While our court of appeals has not yet articulated the standard for this claim, this order will follow *Hafiz v. Greenpoint Mortg. Funding, Inc.*, requiring a plaintiff to allege that: (1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified. 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009); *see also, Harvey v. Bank of America*, 906 F. Supp. 2d 982, 991 (N.D. Cal. 2012) (endorsing *Hafiz*); *Green v. Ctr. Mort. Co.*, 148 F. Supp. 3d 852, 879 (N.D. Cal. 2015) (same).

3

The FHA makes it illegal "for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). A *prima facie* case of disparate treatment requires a showing that: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).

Ms. Harrison's theory of liability is that her home loan application was denied because she is a racial minority. At summary judgment, Ms. Harrison may no longer rely on her complaint's allegations that she was qualified for the loan she sought and that Wells Fargo approved similar loans for non-African-American applicants with similar finances. *See Celotex*, 477 U.S. at 324. She must provide evidence.

Ms. Harrison filed an application for pre-approval of a thirty-year fixed-rate one million dollar loan on a two-and-a-half million dollar property upon a monthly income of approximately thirteen hundred dollars and liquid assets of approximately one hundred seventy dollars (Dkt. No. 87 at 9–10). As Wells Fargo concluded, "Ms. Harrison could not afford a $1,000,000 loan with a monthly income of $1,303" (Dkt. No. 87 at ¶ 7). Ms. Harrison's claims under § 1982 and the ECOA fail because she was not qualified for the mortgage she sought. *See Phiffer*, 648 F.2d at 551; *Hafiz, Inc.*, 652 F. Supp. 2d at 1045.

Ms. Harrison has carried her initial burden under the FHA. She is a member of a protected class and suffered a distinct, palpable injury — denial of home loan pre-approval. "After the plaintiff has established the prima facie case, the burden . . . shift[s] to the defendant to articulate some legitimate, nondiscriminatory reason for the action." As above, Wells Fargo offers such a reason. The bank decided Ms. Harrison could not afford the loan she sought. Ms. Harrison does not contend this reason was merely a pretext; so, her claim fails. *See Harris*, 183 F.3d at 1051.

4

In her deposition, Ms. Harrison appeared to contest that the application described above was hers, though she admitted the name and telephone number were hers. This testimony must be credited. *Anderson*, 477 U.S. at 255. But Ms. Harrison does not offer an alternate mortgage application. Absent such application, she could not have been denied credit for a home loan, so her ECOA, FHA, and § 1982 claims would still fail.

### 2. SECTION 1981.

Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006). It prohibits "both public and purely private acts of racial discrimination," but "reaches only *purposeful* discrimination." Importantly, though, racial animus need not be the "but-for" cause. "If discriminatory intent plays *any* role in a defendant's decision not to contract with a plaintiff, even if it is merely one factor and not the sole cause of the decision, then that plaintiff has not enjoyed the *same right* as a white citizen . . . the most natural reading of § 1981." *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 622, 626 (9th Cir. 2019) (citations and quotations omitted).

Our court of appeals applies the *McDonnell Douglas* burden-shifting framework to § 1981 claims: (1) if a plaintiff establishes a prima facia case of racial discrimination; then (2) the burden falls to the defendant to articulate a legitimate non-discriminatory reason for the adverse action; and (3) if the defendant succeeds, the plaintiff must prove the reason merely pretextual. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144–45 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)).

The first three elements of a prima facie § 1981 claim are: (1) plaintiff is a member of a protected class; (2) she attempted to contract for service; and (3) she was denied service. Our court of appeals has not explicitly adopted the fourth *McDonnell Douglas* element. *Id.* at 1145. This order does not reach this element, however, because, Ms. Harrison fails to present sufficient evidence to satisfy the second or third prongs of her claims. She successfully completed her check deposit; she did not request a cash deposit; and she was not denied the opportunity to contract for her mortgage pre-approval.

First, Ms. Harrison completed her check deposit. She testified at deposition of her intent to make multiple deposits, one cash and one check, at the Wells Fargo branch on June 18, 2018. Though she alleged both the branch manager and teller racially disparaged her, it is indisputable that Ms. Harrison successfully deposited a check for forty-two dollars and twelve cents that afternoon. Thus, she was not denied that service (Harrison Tr. at 93, 96, 97–98, 101–02; Dkt. No. 87 ¶ 5, Exhs. A, C).

Second, Ms. Harrison was not denied a cash deposit. True, as above, Ms. Harrison testified to her intent to complete a cash deposit as well and it is undisputed that Ms. Harrison did not complete one during that visit. And, this order accepts as true Ms. Harrison's testimony that she was discouraged from further interaction due to the teller's racially disparaging remark. *See Anderson*, 477 U.S. 255. But the dispositive point is that the bank did not *refuse* the cash deposit. Section 1981 redresses a "defendant's *decision not to contract with a plaintiff*." *See National Association*, 915 F.3d at 626. It does not appear, nor does Ms. Harrison point to her own testimony to show, that she actually *asked* the teller to complete a cash deposit. Absent an actual attempt to contract, *i.e.* to deposit the ten thousand dollars cash, Ms. Harrison could not have been denied service, much less on the basis of race (Harrison Tr. 124–26). *See* 447 F.3d at 1144–45. In sum, even though this order accepts as true that both the branch manager and teller said hateful slurs to her, those slurs did not prevent the completion of the check deposit and surely would not have prevented completion of the cash deposit had Ms. Harrison tendered the ten thousand dollars for deposit.

Third, to the extent Ms. Harrison's inability to submit extra documents to Wells Fargo in support of her mortgage pre-approval application is a separate claim from those addressed above, Ms. Harrison does not provide evidence that Wells Fargo requested such documentation. Though she testified that she received an email from Wells Fargo requesting more documents, Ms. Harrison has not produced, nor has Wells Fargo been able to locate, that

email.  All we have is Ms. Harrison's hearsay testimony of the email's contents (Harrison Tr. at 79–82; Dkt. No. 87 at ¶ 9).  This is insufficient evidence of an opportunity to contract.[*]

### 3.    REQUESTS FOR JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS.

Wells Fargo offers a docket summary of Ms. Harrison's unsuccessful 2017 bankruptcy petition for judicial notice (Dkt. No. 85).  As the bank legitimately denied Ms. Harrison's mortgage pre-approval application based on her loan-to-income ratio, this request is **DENIED AS MOOT**.

Ms. Harrison offers for judicial notice the exhibits she filed along with her declaration in opposition to the bank's motion.  Because submission of these exhibits with her declaration is sufficient, the request for judicial notice is **DENIED AS MOOT**.  Wells Fargo's objection to this notice is also **DENIED AS MOOT**.

Wells Fargo objects that Ms. Harrison's declaration exhibits lack foundation and are irrelevant.  As the above analysis did not employ any of Ms. Harrison's declarations, the objections are **DENIED AS MOOT**.

### CONCLUSION

Ms. Harrison was unqualified for the mortgage she sought, thus her § 1982, ECOA, and FHA claims fail as a matter of law.  And Ms. Harrison does not provide sufficient evidence that Wells Fargo actually denied her service, thus her § 1981 claims also fail.  The motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  March 20, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[*] It deserves to be said that Nicholas Pacumio, the branch manager in question, also claims minority heritage (Filipino-American), and swore at the hearing that he did not say the things alleged.  Nevertheless, this order must, and does, accept plaintiff's side of these interactions.